# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCHES OF: ) | |
| ) | |
| **Business premises and all outbuildings and** ) | |
| **vehicles at IBR Corporation located at 3440** ) | **MEMORANDUM** |
| **Mill Creek Road, Luray, Virginia** ) | **OPINION** |
| ) | |
| **Business premises of IBR Corporation, doing** ) | Case Nos.: **1:08mj00097** |
| **business as Valley Exxon located at 5581 US** ) | **1:08mj00098** |
| **Highway 340, Stanley, Virginia** ) | **1:08mj00099** |
| ) | **1:08mj00100** |
| **Residence and all outbuildings and vehicles** ) | |
| **of Isaac "Ike" George Jr. located at 2078 Mill** ) | |
| **Creek Road, Luray, Virginia** ) | |
| ) | |
| **Residence and all outbuildings and vehicles of** ) | |
| **William "Bill" George located at 703 Piney** ) | |
| **Hill Road, Luray, Virginia** ) | |

*I. Facts*

These matters are before the court on the petitioners' Motion For Return Of Property, (Docket Item Nos. 7)[1] ("Motion"). The government filed a Response on September 2, 2008. (Docket Item Nos. 45, 47).[2] The court held a hearing on the matter on September 5, 2008. Thereafter, the petitioners filed a Reply on September

---

[1]The Motion is docketed as Docket Item No. 7 in all four cases.

[2]The Response is docketed as Docket Item No. 47 in Case No. 1:08mj00097 and Docket Item No. 45 in Case Nos. 1:08mj00098, 1:08mj00099 and 1:08mj00100.

-1-

12, 2008, and September 16, 2008, (Docket Item Nos. 48, 50),[3] to which the government responded on September 29, 2008. (Docket Item Nos. 50, 51, 52).[4] The Motion is now ripe for decision. Based on the parties' representations and arguments, for the following reasons, it is **ORDERED** that the Motion is **DENIED**.

This court issued search warrants on May 23, 2008, which were executed on May 29, 2008, for the following properties: (1) the business premises and all outbuildings and vehicles at IBR Corporation, located at 3440 Mill Creek Road, Luray, Virginia; (2) the business premises of IBR Corporation, doing business as Valley Exxon, located at 5581 US Highway 340, Stanley, Virginia; (3) the residence and all outbuildings and vehicles of Isaac "Ike" George Jr., located at 2078 Mill Creek Road, Luray, Virginia; and (4) the residence and all outbuildings and vehicles of William "Bill" George, located at 703 Piney Hill Road, Luray, Virginia. (Docket Item Nos. 4, 9). The parties concede that there was a certain attachment to each search warrant, ("Attachment B"), describing the property to be seized at each location, and that Attachment B was not presented with any of the warrants or left at any of the searched premises. The parties are in disagreement as to when the search warrants themselves were presented at each of the properties to be searched. The petitioners claim that the search warrants were not presented until after the searches had commenced, in violation of the Fourth Amendment to the Constitution. However, the government alleges that the search warrants were presented before the actual searches

---

[3]The Reply is docketed as Docket Item No. 50 in Case No. 1:08mj00097 and Docket Item No. 48 in Case Nos. 1:08mj00098, 1:08mj00099 and 1:08mj00100.

[4]The government's Response is docketed as Docket Item No. 52 in Case No. 1:08mj00097, Docket Item No. 50 in Case Nos. 1:08mj00098 and 1:08mj00099 and Docket Item No. 51 in Case No. 1:08mj00100.

-2-

began. The petitioners contend that, for these reasons, the searches were illegal, thereby compelling the return of the property seized pursuant to Federal Rule of Criminal Procedure 41(g). Thus, the petitioners are asking the court to order the return of the property seized by the government. The petitioners also are asking the court to be allowed to view the affidavit submitted in connection with the search warrant applications in establishing probable cause for the issuance of the warrants. For the reasons that follow, the Motion is denied.

## *II. Analysis*

Federal Rule of Criminal Procedure 41(g) states, in relevant part, as follows:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. ... If [the court] grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

FED. R. CRIM. P. 41(g).[5] Thus, under Rule 41(g), the court must order the return of property only if: (1) a search is unlawful; or (2) if a balancing of the interests between the parties requires it. The District Court for the District of Maryland has held that when a motion is made for the return of property before an indictment is filed, but a criminal investigation is pending, such as is the case here, the movant bears the burden of proving that the seizure of the property was illegal. *See In re Grand Jury Subpoena Duces Tecum Issued to: Roe & Roe, Inc.*, 49 F. Supp. 2d 451, 453 (D. Md. 1999). At the September 5, 2008, hearing, the parties agreed that it is the petitioners who bear

---

[5]Rule 41(g) was formerly Rule 41(e). However, the substance of the Rule did not change with the change in numbering. The court notes that some of the case law cited in this Memorandum Opinion was rendered in the context of former Rule 41(e).

this burden.

     The petitioners argue that the searches were unlawful for three reasons. First, they argue that the searches were illegal because the agents executing the search warrants failed to present copies of the search warrants to individuals on the searched premises prior to their execution. As previously mentioned, the parties disagree on this point. Nonetheless, even assuming, *arguendo*, that the search warrants were not presented prior to their execution, the Fourth Circuit has held that such action would not constitute an unlawful search in violation of the Fourth Amendment to the Constitution. The Fourth Circuit has spoken directly to this issue in *United States v. Hurwitz*, 459 F.3d 463 (4th Cir. 2006). In *Hurwitz*, the Fourth Circuit explicitly held that a search is valid even if the search warrant is not presented until after the search is conducted. *See* 459 F.3d at 472 (citing *Groh v. Ramirez*, 540 U.S. 551, 562 n.5 (2004)). That being the case, the undersigned is not persuaded by petitioners' argument to the contrary.

     Second, the petitioners argue that the searches were illegal because Attachment B to the search warrants was not presented along with the search warrants. Again, the Fourth Circuit addressed this issue in *Hurwitz*. In that case, just as here, the search warrant at issue cross-referenced an attachment, which described the property to be seized. *See Hurwitz*, 459 F.3d at 470. Moreover, in *Hurwitz*, as here, the executing officers carried the warrant on the search, but not the attachment. *See* 459 F.3d at 470. Hurwitz argued that because the attachment did not accompany the warrant at the time of the search, the particulars contained in the attachment could not be construed to be part of the search warrant. *See Hurwitz*, 459 F.3d at 470. The Fourth Circuit held otherwise.

The Fourth Amendment provides that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. As the court in *Hurwitz* stated, "[t]he requirement that a search warrant describe with particularity the items to be seized ensures that a citizen is not subjected to 'a general, exploratory rummaging in [his personal] belongings." 459 F.3d at 470 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). The court in *Hurwitz* held that "[t]he particularity requirement of the Fourth Amendment may be satisfied by cross-reference in the warrant to separate documents that identify the property in sufficient detail." 459 F.3d at 470 (citing *Groh*, 540 U.S. at 557); *United States v. Washington*, 852 F.2d 803, 805 (4th Cir. 1988)). The *Hurwitz* court stated that "[a]s a general rule, a supporting affidavit or document may be read together with (and considered part of) a warrant that otherwise lacks sufficient particularity 'if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.'" 459 F.3d at 470-71 (quoting *Groh*, 540 U.S. at 557-58). The Fourth Circuit emphasized that a majority of other circuits appeared to require both of these things – the appropriate words of incorporation and that the warrant be accompanied by the cross-referenced documents that supply the requisite particularity. *See Hurwitz*, 459 F.3d at 471. However, the *Hurwitz* court explicitly declined to follow the majority of its sister circuits, instead, holding that it is sufficient *either* for the warrant to incorporate the supporting document by reference *or* for the supporting document to be attached to the warrant itself. *See Hurwitz*, 459 F.3d at 471 (citing *Washington*, 852 F.2d at 805) (concluding that the warrant was sufficiently particular where the warrant completely failed to refer to the supporting affidavit listing items

to be seized, but the affidavit was attached, and explaining that "[a]n affidavit may provide the necessary particularity for a warrant if it is *either* incorporated into *or* attached to the warrant") (emphasis added) (internal quotation marks omitted). The *Hurwitz* court noted that the Sixth Circuit also subscribes to this view. *See* 459 F.3d at 471 (citing *Baranski v. Fifteen Unknown ATF Agents*, 452 F.3d 433 (6th Cir. 2006)) (en banc).

In the case at bar, the warrant states, in relevant part, as follows: "Affidavit(s) having been made before me by [the affiant] who has reason to believe that ... on the premises known as ... 3440 Mill Creek Road, Luray, Virginia ... there is now concealed a certain person or property, namely ... See Attachment B. ..." The warrants for all four premises contain the same language, with the exception of the description of the location of the premises to be searched. The petitioners do not allege that this language is insufficient cross-reference language. Likewise, the petitioners do not dispute that Attachment B describes the items to be seized with particularity. That being the case, the court finds that the search warrants contain the sufficient particularity to be in conformance with the constitutional requirements of the Fourth Amendment.

Third, the petitioners argue that probable cause is lacking for the issuance of the search warrants. In this regard, they are moving the court to unseal the affidavit upon which the court relied in making its probable cause determination. The petitioners attempt to distinguish *Hurwitz* from the present case in this regard. In particular, the petitioners argue that Hurwitz was given the opportunity to view the affidavit. The court does not find the petitioners' argument persuasive. As the government notes in

-6-

Case 1:08-mj-00099-PMS   Document 52   Filed 10/06/08   Page 6 of 12   Pageid#: 169

its most recent Response, *Hurwitz* was decided in the context of a motion to suppress, not a Rule 41(g) motion for the return of property. At the September 5, 2008, hearing, the parties agreed that should the petitioners be indicted on criminal charges in the future, they would be allowed, at that time, to view the affidavit in preparing a motion to suppress evidence seized pursuant to the search warrants. Thus, this case clearly is distinguishable from *Hurwitz*, but not in the manner in which the petitioners contend.

In any event, putting aside the differing procedural postures of the two cases for the moment, the court notes that the Fourth Circuit's holding in *Hurwitz* did not turn on the fact that Hurwitz was allowed to view the affidavit. Instead, it is clear from the *Hurwitz* opinion that the Fourth Circuit's holding was based on its finding that the "policy aims," however important, of guarding against general searches, assuring individuals whose property is searched or seized of the lawful authority of the executing officer, his need to search and the limits of his power to search and informing the executing officer of the limits of his discretion to search, "do not reflect a constitutional mandate that an executing officer possess or exhibit the affidavit or any other document incorporated into the warrant at the time of the search *in order for the search to be valid*." 459 F.3d at 472 (emphasis in original). Instead, the court found that property owners are protected by the Constitution by the interposition of "the deliberate, impartial judgment of a judicial officer" before a warrant is issued, and by the "right to suppress evidence improperly obtained" after the execution of a search warrant. *Hurwitz*, 459 F.3d at 472 (quoting *United States v. Grubbs*, 547 U.S. 90, 99 (2006)). The *Hurwitz* court held that "[t]hese [constitutional] protections are sufficient to ensure that the officer's search is properly limited and to provide

assurance to the property owner that the executing officer enjoys the lawful authority to search for specific items." 459 F.3d at 472. In addition to these reasons for the court's holding, the Fourth Circuit simply noted that, in that case, Hurwitz had actually been able to view the affidavit after the search. *See Hurwitz*, 459 F.3d at 472. The undersigned reads this language to mean simply that, in that case, while not necessary to its holding, Hurwitz had, in fact, reviewed the affidavit.

Moreover, the court notes that the nature of the investigation in *Hurwitz* and the nature of the investigation in the case currently before the court are distinguishable. In particular, in *Hurwitz*, there is no indication that anyone other than Hurwitz himself, a medical doctor convicted of multiple counts of drug trafficking for prescribing narcotic pain medication, was subject to investigation. Thus, once the search was executed at Hurwitz's office, Hurwitz's viewing of the affidavit in support of the search warrant would have no effect on the government's investigation because, for all intents and purposes, the investigation was concluded. To the contrary, here, the underlying investigation potentially, at least, involves other individuals in addition to the petitioners. That being the case, revealing the affidavit to the petitioners could, indeed, jeopardize the ongoing criminal investigation, in that it could, as the government contends, breach grand jury secrecy, violate the privacy of implicated persons who have not been charged, publicly identify potential witnesses and identify unnamed subjects.

Petitioners' counsel argued at the September 5, 2008, hearing, that he had reason to believe that the information relied upon by the affiant was unreliable and false. Petitioners' counsel suggests allowing him alone to view the sealed affidavit

-8-

subject to an appropriate protective order. However, the court has difficulty seeing how allowing counsel to view the affidavit without the petitioners' input would be of any benefit in determining the reliability of the information relied upon by the affiant in creating the affidavit and upon which the undersigned found that probable cause existed for the issuance of the warrants. While the court recognizes the difficulty of the petitioners in attacking the probable cause finding without reviewing the affidavit that constituted the basis for the undersigned's probable cause finding and subsequent issuance of the search warrants, the request to view the affidavit is denied for all of the above-stated reasons. Moreover, the court finds that the petitioners' rights are adequately safeguarded by the issuance of the warrants upon a finding of probable cause by a neutral and detached magistrate and, further, by the fact that the affidavits will be unsealed in the event that the petitioners are charged with crimes. At such time, the petitioners then will be able to attack the reliability of the information contained in the affidavit by way of a motion to suppress.

Having found that the searches executed on May 29, 2008, were, in fact, legal searches, the court now must balance the parties' interests in determining whether the petitioners are entitled to a return of their property. In particular, the court must balance the government's interest in holding the property against the owner's right to use the property. *See United States v. Carter*, 859 F. Supp. 202, 204 (E.D. Va. 1994), *aff'd,* 139 F.3d 424 (4th Cir. 1998). In striking this balance, the court need not return the property where the government has a "continuing interest" in the property. *See Carter*, 859 F. Supp. at 205. In this regard, an ongoing criminal investigation has been deemed an appropriate continuing interest. *See Carter*, 859 F. Supp. at 205 (quoting *Sovereign News Co. v. United States*, 690 F.2d 569, 577 (6th Cir. 1982), *cert.*

-9-

Case 1:08-mj-00099-PMS   Document 52   Filed 10/06/08   Page 9 of 12   Pageid#: 172

*denied*, 464 U.S. 814 (1983)); *Roe & Roe, Inc.*, 49 F. Supp. 2d at 453 (citations omitted). Nonetheless, even if the government has such a continuing interest in the property, it may not hold the property for an unreasonable time without taking some action with regard to the property. *See Carter*, 859 F. Supp. at 205 (citing *Sovereign News Co.*, 690 F.2d at 577; *United States v. Premises Known as 608 Taylor Ave., Apartment 302*, 584 F.2d 1297, 1302 (3d Cir. 1978)).

Here, there is no dispute that there exists an ongoing criminal investigation into the petitioners' activities. Thus, the government clearly possesses the requisite continuing interest in the property. That being the case, the court must determine whether the government has held the property for an unreasonable period of time without taking some action with regard to it. I find that it has not. The property was seized on May 29, 2008, and, as of the hearing on September 5, 2008, the government has made copies of nearly all of the property seized available to the petitioners, and the government has represented to the court that it is presently copying all of the remaining items seized to be returned to the petitioners. The petitioners do not argue that such copies of the seized property are insufficient to effectuate the continued operation of their businesses. Thus, the petitioners have not shown any prejudice by the government's continued retention of the lawfully seized property. For these reasons, I find that the balancing of the interests in this case tips decidedly in favor of the government.

Lastly, the petitioners argue that forcing them to wait to challenge the legality of the searches by way of a motion to suppress subsequent to indictment gives the government an "unfair opportunity to extend the process well beyond the statute of

limitations of a *Bivens* claim."[6] The court rejects this argument. There is no statute of limitations period for *Bivens* actions. Instead, the court must look to the most analogous state law statute of limitations period. *See Wilson v. Garcia*, 471 U.S. 261, 266-70 (1985) (holding that a state's personal injury statute of limitations period is most appropriate for § 1983 actions). It has clearly been held that, for purposes of the statute of limitations, *Bivens* actions are considered personal injury claims and are governed by the personal injury statute of limitations and tolling laws in the state where the alleged injury occurred. *See Smith v. Bledsoe*, 2007 WL 152117, *2 (W.D. Va. Jan. 16, 2007) (citing *Blanck v. McKeen,* 707 F.2d 817, 819 (4th Cir. 1983)). Here, the petitioners' alleged constitutional violations occurred in Virginia. Virginia has a two-year statute of limitations period for general personal injury claims. *See* VA. CODE ANN. § 8.01-243(A). Thus, should the petitioners decide to file a civil rights action under *Bivens*, they must do so within two years of the accrual of their claim. The petitioners contend that the length of the criminal investigation may preclude their ability to bring a *Bivens* action for civil liability. However, the court finds that it is unnecessary to explore this argument in any detail because the government, in its most recent Response, has represented to the court that it is common for civil actions to be stayed pending the completion of a criminal investigation. Thus, the court interprets this statement by the government to mean that it will take no action to prevent such a stay in this case, and the court will hold the government to that interpretation.

For all of the above-stated reasons, I find that the searches conducted on May

---

[6]*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), allows an individual to bring an action for damages against federal officers, acting under color of federal law, for a violation of the individual's Fourth Amendment rights. It is the federal counterpart to a 42 U.S.C. § 1983 claim.

-11-

29, 2008, were not illegal. I further find that a balancing of the government's interest in retention of the petitioners' seized property outweighs the petitioners' rights to the property. Finally, I find that the government has not held the property for an unreasonable amount of time without taking any action with regard to it. Thus, the petitioners' Motion will be denied in its entirety. An appropriate order will be entered.

The Clerk shall certify a copy of this Order to all counsel of record.

ENTERED this 6th day of October 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE